IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ELBERT LEE VAUGHT, IV,

      Plaintiff,                      No. CIV S-09-3422 MCE CKD P

      vs.

D. CLARK, et al.,

      Defendants.               FINDINGS AND RECOMMENDATIONS

                            /

      Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action under 42 U.S.C. § 1983. He alleges prison officials at High Desert State Prison (HDSP) subjected him to cruel and unusual punishment by depriving him of the ability to exercise during three lockdowns in 2009. Defendants have filed a motion to dismiss, arguing that plaintiff failed to exhaust administrative remedies as to any of the three lockdowns, that they cannot be held liable under a theory of vicarious liability and that plaintiff has failed to state a claim on which relief could be granted. The motion has been fully briefed.

      I.   Failure to exhaust

      A motion to dismiss for failure to exhaust administrative remedies prior to filing suit arises under Rule 12(b) of the Federal Rules of Civil Procedure. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding a motion to dismiss for failure to exhaust non-judicial

1

remedies, the court may look beyond the pleadings and decide disputed issues of fact. Id. at 1120. If the district court concludes that the prisoner has not exhausted non-judicial remedies, the proper remedy is dismissal of the claim without prejudice. Id.

The exhaustion requirement is rooted in the Prison Litigation Reform Act (PLRA), which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). At the time of the alleged violations in 2009, the California Department of Corrections and Rehabilitation's (CDCR) regulations provided administrative procedures in the form of one informal and three formal levels of review to address plaintiff's claims.[1] Administrative procedures were exhausted once a prisoner received a "Director's Level Decision," or third level review, with respect to his issues or claims. CDCR regulations in 2009 required an inmate to file his prisoner grievance within fifteen working days of the events grieved.[2] Weekends and holidays were not counted as working days. CCR title 15 § 4003(j)(2); Barrett v. Cate, 2011 WL 6753993 at *4 (E.D. Cal.).

If a plaintiff failed to exhaust available administrative remedies by filing a late grievance, his federal action must be dismissed. Woodford v. Ngo, 548 U.S. 81 (2006). Exhaustion during the pendency of the litigation will not save an action from dismissal. McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002). Exhaustion "'means using all steps that the agency holds out, and doing so properly....'" Woodford, 548 U.S. at 90 (citation omitted). Therefore, an inmate must pursue a grievance through every stage of the prison's

---

[1] The informal level of review was eliminated by amendment to CCR title 15 § 3084.7, effective January 28, 2011.

[2] The regulation pertinent to this case, CCR 15 title § 3084.6(c) (2009), was amended in 2011 to increase the limitation period for filing an appeal to thirty days. It was re-listed at CCR title 15 § 3084.8(b). At the time plaintiff filed the appeals relevant to this case, California regulations did not require an inmate to identify a specific prison official in a grievance. Therefore this plaintiff need not name a particular individual during the appeals process in order to name that person as a defendant and meet the PLRA's exhaustion requirement. See Jones v. Bock, 549 U.S. 199, 218-219 (2007); Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005).

administrative process before a civil rights action is filed, unless he can demonstrate a step was not available to him.

The term "available" in prisoners' civil rights cases stems directly from the PLRA, which bars an action "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Ninth Circuit has held that a prisoner has met the "availability" requirement if the prisoner attempted to complete the grievance process but was precluded by a prison official's mistake. See Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010). The reasoning in such cases is the prison official's action (or inaction) effectively rendered further exhaustion unavailable under the PLRA. Other circuit courts have held that a prisoner has satisfied the exhaustion requirement if prison officials prevent exhaustion through their own misconduct or fail to respond to a grievance within the applicable time limits. There too, courts have applied the "availability" requirement of the PLRA. See, e.g., Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006) (administrative remedy not available if prison employees do not respond to a properly filed grievance or use affirmative misconduct to obstruct exhaustion).

Defendants bear the burden of proving plaintiff's failure to exhaust. Wyatt, 315 F.3d at 1119. The court resolves all ambiguities in favor of the non-moving party. Estelle v. Gamble, 429 U.S. 97, 106 (1976).

A.  Exhaustion analysis

Defendants correctly argue that plaintiff was required to exhaust administrative remedies as to each of the three lockdowns during which prison officials allegedly deprived him of his ability to exercise. The lockdowns occurred: (1) from July 29 to September 10, 2009; (2) from September 17 to October 21, 2009; and (3) from October 24 to, at the earliest, December 9 2009. The end-date of the third lockdown is not clear from the complaint, since plaintiff filed this action while that lockdown was still in effect. In any event, defendants argue that plaintiff failed to exhaust the grievance process as to all three lockdowns.

////

Plaintiff concedes that he did not file a prison grievance about conditions during the first lockdown. See Opposition at 4. Therefore the motion to dismiss should be granted against any claim arising from the lockdown of July 29 to September 10, 2009.

          1. Lockdown of September 17 to October 21, 2009

The parties do not dispute that on October 1, 2009, plaintiff submitted a 602 appeal form complaining about his inability to exercise during the second lockdown. At the time, CDCR regulations limited inmates to one non-emergency appeal every seven days. See CCR title 15, § 3084.4(a)(1) (2009).[3] Plaintiff's appeal was not immediately accepted because plaintiff had already filed an unrelated, non-emergency appeal on September 29. See Plaintiff's Ex Parte Motion, Ex. A at 4 (Docket No. 14).[4] He re-submitted an identical appeal on October 8. Id. at 5. It was received October 12. Id. An appeals coordinator at HDSP, D. Clark, rejected the appeal because it was filed seventeen days after the lockdown began and, according to Clark, untimely. See id. at 3.

In their motion to dismiss, defendants inaccurately construe the October 8 appeal as pertaining to a claim that accrued at the beginning of the first lockdown, on July 29, 2009. The appeal plainly seeks relief from the lockdown that was in effect at the time it was filed – i.e., the lockdown that began September 17 ("this yard has had an on going pattern of lockdowns ... lockdown from July 29th to Sept.10th (for example). And now because of three stabbings...") – and it is disingenuous for defendants to argue otherwise. Indeed, they change their argument in their reply, relying for the first time on Clark's actual finding, which is written on the face of the screening form, that seventeen working days had passed since the lockdown began and that therefore the appeal was two days late.

---

[3] CCR title 15 § 3084.4(a) now limits inmates to one non-emergency appeal every fourteen days. The parties do not dispute that the seven-day limit was in effect in October 2009.

[4] Anticipating an exhaustion challenge to his complaint, plaintiff filed an "ex parte motion" in which he submitted records of his attempts to exhaust the grievance process during the 2009 lockdowns.

4

In fact, Clark's calculation on the timeliness of the October 8 appeal is wrong. The regulation in effect in October 2009 stated that "[a]n appellant must submit the appeal within 15 working days of the event or decision being appealed[.]" CCR 15 title § 3084.6(c) (2009). Clark appears to have included in his count the additional two working days that passed until the appeal was received on October 12 in the HDSP appeals office. The date of his office's receipt should not have been included; the date an inmate "submits the appeal" is, by the very clear terms of the regulation, the appropriate date for calculating whether the appeal is timely. Here, that date is October 8. Excluding holidays and weekends, October 8, 2009, was fifteen working days after the lockdown began on September 17.

Plaintiff timely filed his grievance about an alleged deprivation of exercise during the lockdown that began September 17, 2009. Clark erroneously rejected the appeal as untimely. The Ninth Circuit has recently held that

> improper screening of an inmate's administrative grievances renders administrative remedies 'effectively unavailable' such that exhaustion is not required under the PLRA. If prison officials screen out an inmate's appeals for improper reasons, the inmate cannot pursue the necessary sequence of appeals, and administrative remedies are therefore plainly unavailable.

Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010). An inmate receives the benefit of this exception from the exhaustion requirement if (1) he filed a grievance that, pursued through every administrative level of appeal, would have sufficiently exhausted his claim and (2) prison officials rejected his grievance "for reasons inconsistent with or unsupported by applicable regulations." Id. at 823-24. This plaintiff meets both conditions. His complaint about inadequate exercise is clearly stated in the grievance of October 8. Had Clark not improperly screened his appeal, that claim would have been exhausted. Furthermore, Clark used the wrong end-date for calculating the number of working days that had expired since the beginning of the lockdown. As discussed above, he should have counted from the day plaintiff submitted the grievance, October 8. CCR 15 Title § 3084.6(c) (2009). Had he conducted an accurate

calculation, he would have found the appeal was timely. His finding that it was untimely is not supported by the applicable regulation.

For the foregoing reasons, the court finds the plaintiff is excused from fully exhausting his claim that he was deprived adequate exercise during the lockdown of September 17 to October 21, 2009. See Sapp, supra. The motion to dismiss as to that claim should be denied.

### 2. Lockdown of October 24 to December 2009

It appears that the third lockdown at issue in this case was still in effect on December 9, 2009, when plaintiff filed this lawsuit. He submitted a lengthy grievance on October 27, 2009, as an "emergency appeal." Emergency appeals are processed in a more expedited manner than non-emergency appeals. At the time, the applicable CDCR regulation stated that circumstances justifying an emergency appeal were those in which the appeals process' "regular time limits may result in a threat to the appellant's safety or cause other serious and irreparable harm[.]" CCR title 15 § 3084.7(a)(1) (2009). The regulation also stated that if an appeal did not qualify as an emergency, "the inmate shall be notified and the appeal shall be processed as a regular appeal." Id. at § 3084.7(a)(2)(A).

Clark determined that the appeal did not meet the criteria for an "emergency appeal" and issued a notification of his decision to plaintiff on November 2, 2009. See Ex Parte Motion at 15. He also screened out the appeal because plaintiff had filed it in violation of the seven-day limitation of CCR title 15 § 3084.4(a)(1) (2009). Id. at 16. He noted on the rejection form that plaintiff could re-submit the grievance after the seven-day limit expired. Id.

Plaintiff re-submitted the appeal on November 9, 2009. Id. at 17. He attached a separate page to the 602 form, arguing again that his grievance should be deemed an emergency appeal. See id. at 14. Clark rejected the appeal again, this time invoking the boilerplate explanation on the screen-out form that "You have not reasonably demonstrated that your appeal issue(s) has adversely affected your welfare. Per CCR 3084.1(a)." Id. at 13. The emphasis to

6

1  "your" does not appear in the boilerplate.  Rather, Clark added it with his pen.

2  Both parties insinuate that Clark screened out the appeal because plaintiff insisted
3  on submitting it as an emergency appeal.  If that were the case, it would constitute an improper
4  rejection, because there was no regulation that authorized screening out an appeal on that basis.
5  The argument does not go very far for either side, though, since the screen-out form clearly states
6  the official reason Clark rejected the appeal – i.e., because the appeal did not "demonstrate" any
7  "adverse affect" on plaintiff's "welfare."

8  The court finds it was improper and unreasonable for Clark to reject plaintiff's
9  November 9 appeal for not "demonstrat[ing] that your appeal issue(s) has adversely affected your
10 welfare."  The regulation cited in the boilerplate Clark used, CCR title 15 § 3084.1(a), at the time
11 stated the right of any inmate to "appeal any... condition... which they can demonstrate as having
12 an adverse effect upon their health, safety or welfare."  Clark's screening of plaintiff's appeal is
13 at odds with the plain meaning of the words in the regulation and plaintiff's appeal.  Plaintiff
14 alleges in the first sentence of his grievance that "[t]he problem is I am being deprived of my
15 constitutionally protected rights concerning exercise[.]"  Ex Parte Motion at 17.  He avers that
16 prison officials are violating that right "by keeping myself and all other inmates of the general
17 population locked away in our cells for months at a time with no type of outdoor exercise what-
18 so-ever."  Id.  He concludes by describing the adverse effects of the ongoing violation: "vitamin
19 D deficiency, from lack of sun; joint soreness from lack of movement[;] back problems; muscle
20 atrophy from muscle stagnation[.]"  Id. at 18.  The fact that he appears also to speak for other
21 prisoners' welfare in his description of the adverse effects of the lockdown is of no moment to
22 the gravamen of his complaint to prison officials.  It is clear that he includes himself among those
23 who are suffering from the alleged violation and therefore complains the detrimental effects on
24 his own welfare.

25 Plaintiff's November 9 appeal clearly apprised prison officials of the alleged
26 problem of inadequate exercise.  It would have exhausted plaintiff's claim had it proceeded

7

through the entire appeals process; it thus meets the first condition required under Sapp. Moreover, Clark's finding that plaintiff was not addressing a problem that adversely affected plaintiff's own welfare was on its face an unreasonable, and therefore unsupportable, application of the regulation he cited, CCR title 15 § 3084.1(a). Clark's action thus satisfies the second requirement under Sapp. Pursuant to Sapp, then, the court finds that Clark's improper screening of plaintiff's grievance excuses him from fully exhausting his appeal concerning conditions during the October 24 lockdown. The motion to dismiss should be denied as to that claim.

II. Vicarious liability

Supervisory officials cannot be held vicariously liable for the actions of their subordinates in a § 1983 action. Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989). A supervisor can be held liable for a violation of constitutional rights even if he or she was not personally involved in the actions which led to the violation if the supervisor implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation. Id. Participation sufficient to incur liability may involve the setting in motion of acts which cause others to inflict constitutional injury. Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir.1978).

When a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged in a complaint. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). A plaintiff must allege: (1) that the defendant's "own culpable action or inaction in the training, supervision, or control of his subordinates" caused the constitutional injury; (2) that he acquiesce[d] in the constitutional deprivations of which [the] complaint is made;" or (3) that their conduct showed a "reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir.1991). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th

1 Cir. 1982).

2       Defendants McDonald, Gower and Wright argue they cannot be held liable simply
3 by virtue of their respective positions as warden, chief deputy warden and associate warden at the
4 time of the lockdowns. See Motion at 13. They contend that the complaint does not allege that
5 they "personally participated in the alleged deprivation of exercise time" or otherwise directed
6 actions that violated plaintiff's constitutional rights or that they knew about any violations and
7 failed to prevent them. Id. at 14. The court does not find this argument persuasive.

8       The central, offending act alleged in this case was the maintenance of lockdowns
9 over periods of several weeks without provision for outdoor exercise. Although plaintiff is not
10 specific exactly which defendant had direct control or involvement in the lockdowns, the
11 defendants bear the initial burden of showing that as a matter of law it could not have been
12 McDonald, Gower or Wright. It is reasonable to conclude, indeed, that <u>by virtue of their</u>
13 <u>supervisory positions in the prison</u>, one or all of them were directly involved in the decision to
14 enact the lockdowns and one or all of them were involved in the decision(s) to maintain the
15 lockdowns over a long period of time. See, e.g., Norwood v. Alameida, 2007 WL 685940 at *8-
16 *10 (E.D. Cal.) (discussing the direct involvement of a warden, chief deputy warden, associate
17 warden and facility captain in managing a lockdown); Tatum v. Pliler, 2007 WL 1720165 at *2
18 (E.D. Cal.) (finding that only the warden, chief deputy warden, associate warden and facility
19 captain were authorized to declare a lockdown and only the warden had authority to end it). The
20 defendants themselves must know this to be the case, and it is telling that none of them have
21 come forward with any legal basis to support their position that they had nothing to do with
22 policies pursued as part of the lockdowns.

23       The defendants cannot simply assert their supervisory positions as prima facie
24 evidence that they had no connection to the alleged deprivation of exercise when plaintiff's core
25 allegation is that the lockdowns were managed in such a way as to deprive him of the ability to
26 exercise for weeks on end. Indeed, it is disingenuous to so argue in the face of plaintiff's clearly

written claims: as to defendant Gower, he alleges that Gower "is in [cahoots] with others to deprive Plaintiff of exercise for much longer than 10 days at a time"; as to defendant Wright, he alleges that Wright has violated his rights under the Eighth Amendment by not providing plaintiff the ability to exercise; and as to defendant McDonald, he alleges that McDonald used his "controlling authority" in "not affording Plaintiff his exercise every 10 days... in violation of the Constitution[.]" Complaint at 2-3. These are clear allegations of direct involvement in a constitutional violation. Defendants' argument that the complaint asserts liability against them only under a theory of vicarious liability is contradicted by these plain words and is without merit.

### III. Failure to state a claim

Defendants assert that plaintiff has not adequately stated his claim under prevailing standards of pleading and that he has not stated a claim cognizable under the Eighth Amendment.

#### 1. Sufficiency of plaintiff's pleading

When considering whether a complaint states a claim upon which relief can be granted, the court must accept the allegations as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007), and construe the complaint in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972). Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Furthermore, a claim upon which the court can grant relief must have facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. Attachments to a complaint are considered to be part of the complaint for purposes of a motion to dismiss for failure to state a claim. Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir.1990).

Defendants, citing the Supreme Court's decision in Iqbal, argue that there is no "factual content" in the complaint from which the court could draw any reasonable inference that they are liable for the alleged violations of plaintiff's constitutional rights. For the same reasons explained in the court's rejection of defendants' vicarious liability argument, the court finds their contention that plaintiff has failed the test of Iqbal to be baseless in light of what he has actually pled.

### 2. Deprivation of exercise under the Eighth Amendment

Defendants also argue that plaintiff's allegation that he has been deprived of outdoor exercise does not state a claim cognizable under the Eighth Amendment. As a general matter, a plaintiff who claims that the conditions of his confinement fall below the constitutional standard must make two showings. "First, the plaintiff must make an 'objective' showing that the deprivation was 'sufficiently serious' to form the basis for an Eighth Amendment violation." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000)(citation omitted). "The Constitution... 'does not mandate comfortable prisons, and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991) (citations omitted). Second, the prisoner must make a "subjective" showing that prison officials "acted with the requisite culpable intent such that the infliction of pain is 'unnecessary and wanton.' In prison conditions cases, prison officials act with the requisite culpable intent when they act with deliberate indifference to the inmate's suffering." Anderson v. County of Kern, 45 F.3d 1310, 1312 (9th Cir.1995).

\\\\

The Ninth Circuit has "consistently held that 'ordinarily the lack of outside exercise for extended periods is a sufficiently serious deprivation' for Eighth Amendment purposes." Thomas v. Ponder, 611 F.3d 1144, 1151 (9th Cir. 2010); see also Spain v. Procunier, 600 F.2d 189, 200 (9th Cir. 1979) and Toussaint v. McCarthy, 801 F.2d 1080 (9th Cir. 1986). Although there is no bright-line standard marking at what point the denial of outdoor exercise becomes a constitutional violation, the Ninth Circuit has held that a prohibition of six weeks is a "sufficiently serious" deprivation to support a constitutional claim. See Lopez v. Smith, 203 F.3d 1122, 1132-33 (9th Cir. 2000).

Here, plaintiff alleges he was deprived any access to outdoor exercise for two relatively long periods of time: one, from September 17 to October 21, 2009, and another from October 24 to at least December 9, 2009. Under Lopez, both time periods could comprise unconstitutionally long prohibitions on an inmate's access to outdoor exercise such that the objective prong of an Eighth Amendment claim would be met. The court makes no finding at this stage as to whether the totality of the evidence in this case will bear out plaintiff's allegations. Rather, the court only finds that at this stage plaintiff has alleged facts that, if true, could support a finding that the alleged deprivation was "sufficiently serious" to support an Eighth Amendment claim.[5]

\\\\\

---

[5] Defendants suggest that plaintiff must also allege that he was unable to exercise indoors during the lockdowns. Although his ability to exercise indoors may be relevant to plaintiff's ultimate success on his claims, the court is not aware of any case that requires him to plead he was denied the ability to exercise in toto. The statements from the Ninth Circuit in Lopez and Thomas, supra, are clear in their focus on the deprivation of outdoor exercise as a potential constitutional violation; they do not add anything that would establish indoor exercise as a pleading requirement. In fact, in the case on which defendants rely, LeMaire v. Maass, 12 F.3d 1444, 1457-58 (9th Cir. 1993), the Ninth Circuit emphasized that "the long-term denial of outside exercise is unconstitutional" and found on that sole basis the inmate had "suffered a sufficiently serious deprivation under the Eighth Amendment." The Ninth Circuit cited the inmate's access to indoor exercise as one of several factors that leaned against plaintiff's ability to recover for the deprivation, but there was no suggestion that the availability of indoor exercise was by itself fatal to his case.

As for the subjective prong of his claims, plaintiff does not explicitly aver "deliberate indifference" by defendants. However, he does color the long-term prohibition on outdoor exercise as "similar to keeping two pit bulls in a cell for months at a time," "treating human beings like trash," and indicative of a practice in which a "human [is] less than an animal." Complaint at 3. For purposes of this motion, these allegations, while unorthodox as assertions of deliberate indifference, satisfy the subjective prong of plaintiff's Eighth Amendment claim.

### IV. Injunctive relief

According to the court's docket, plaintiff is now incarcerated at the Sierra Conservation Center, a facility wholly separate from HDSP. Generally, when a prisoner complains of unconstitutional conditions of confinement and is transferred to another facility, a claim for injunctive relief from those conditions becomes moot. See Brady v. Smith, 656 F.2d 466, 468 (9th Cir.1981); Darring v. Kinchoe, 783 F.2d 874, 876 (9th Cir.1986); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir.1990). Plaintiff correctly concedes that his claims for injunctive relief became moot upon his transfer out of HDSP. See Opp'n at 11. Therefore all claims for injunctive relief should be dismissed.

### V. Qualified immunity

Defendants argue they are entitled to qualified immunity. Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining whether a governmental officer is immune from suit based on the doctrine of qualified immunity, the court considers two questions. One asks whether the facts alleged, viewed in the light most favorable to the party asserting the injury, comprise the violation a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). A negative answer ends the analysis, with qualified immunity protecting defendant from liability. Id. If a constitutional

violation occurred, the court further inquires "whether the right was clearly established." Id. "If the law did not put the [defendant] on notice that [his] conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Id. at 202. The inquiry into whether a right was clearly established "must be taken in light of the specific context of the case, not as a broad general proposition." Id. at 201. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

The district court may decide the order of addressing the two prongs of its qualified immunity analysis in accordance with fairness and efficiency and in light of the circumstances of a particular case. Pearson v. Callahan, 555 U.S. 223 (2009). Given the particular circumstances of this case, this court sees no reason to depart from the traditional order of analysis presented in Saucier.

The first inquiry under Saucier – whether the constitutional right was clearly established at the time of the deprivation – has a clear answer. In Allen v. Sakai, 48 F.3d 1082, 1084 (9th Cir. 1994), the Ninth Circuit stated that after its decisions in Spain v. Procunier, 600 F.2d 189 (9th Cir. 1979) and Toussaint v. McCarthy, 801 F.2d 1080 (9th Cir.1986), "defendants cannot legitimately claim that their duty to provide regular outdoor exercise to [the inmate] was not clearly established." That holding applies with equal force here.

Defendants focus on the second inquiry under Saucier, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. Defendants explain that "the lockdown was imposed due to the administrations [sic] belief that a certain group of inmates faced imminent harm, and because of three simultaneous stabbings on one prison yard." Motion at 20-21. They argue that "[a] reasonable prison official in Defendants' positions, by choosing to protect the safety of inmates and staff at

the expense of outdoor exercise, would have believed their conduct was lawful." Id. at 21-22. They point to the authority in Norwood v. Vance, 591 F.3d 1062, 1068 (9th Cir. 2010), in which the Ninth Circuit found that in light of "[t]he extraordinary violence gripping the prison," prison officials' prohibition on outdoor exercise during prolonged lockdowns in that case was reasonable. The court concluded that "no officer could reasonably have anticipated that such prudence would be found to violate the Eighth Amendment." Id. at 1069.

The Ninth Circuit's decision in Norwood is unquestionably relevant to defendants' assertion of qualified immunity, but the court does not yet have a sufficiently developed record on which it can apply Norwood and any other pertinent authority. The analysis in Norwood begins with the reminder that "the qualified immunity inquiry is highly context-sensitive[.]" Id. at 1068. Although, in this case, there are already indications in the record of a tense and potentially violent environment at HDSP at the time of the lockdowns, the court cannot make any conclusive determinations about the context of defendants' decisions to order those lockdowns without considerably more information before it. Therefore the court should deny the motion to dismiss without prejudice to defendants' right to reassert qualified immunity after discovery has ended and both sides have had an opportunity to argue the issue with the benefit of a fully developed factual record.

Accordingly, IT IS RECOMMENDED that the motion to dismiss (Docket No. 18) be granted in part and denied in part:

1. The motion should be granted as to all claims for deprivation of outdoor exercise during the lockdown of July 29 to September 10, 2009.

2. The motion should be granted as to all claims for injunctive relief.

3. The motion should be denied as to plaintiff's claims for deprivation of outdoor exercise during the lockdown of September 17 to October 21, 2009, and the lockdown that began October 24, 2009 and lasted until at least December 9, 2009. The motion should be denied without prejudice to defendants' right to re-assert qualified immunity after the close of discovery.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 16, 2012

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

3
vaug3422.57